**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| G.R.,<br><br>                      Plaintiff,<br><br>v.<br><br>GURBIR S. GREWAL, *Attorney General for the State of New Jersey*,<br><br>                      Defendant. | Civil Action No. 19-8649 (SDW) (LDW)<br><br>**OPINION**<br><br>November 30, 2020 |

**WIGENTON**, District Judge.

Before this Court is Defendant New Jersey Attorney General Gurbir S. Grewal's ("Defendant") Motion to Dismiss Plaintiff G.R.'s ("Plaintiff") Complaint (D.E. 2) for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1441. This opinion is issued without oral argument pursuant to Rule 78.[1] For the reasons stated herein, the Motion to Dismiss is **GRANTED**.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

In 1994, the New Jersey Legislature enacted N.J.S.A. 2C:7-1, *et seq.* ("Megan's Law"), to "permit law enforcement officials to identify and alert the public" about sex offenders who may pose a danger to children. N.J.S.A. 2C:7-1(a); *see Artway v. Attorney Gen. of State of N.J.*, 81 F.3d 1235, 1243 (3d Cir. 1996). The statutory scheme established both a three-tiered notification

---

[1] Plaintiff's request for oral argument, (D.E. 45), is denied.

system and a registration requirement for prescribed categories of sex offenders.  *Id.*  Registrants classified as Tier One are deemed to have the relatively lowest risk to reoffend while those classified as Tier Three are deemed to have the relatively highest risk.  N.J.S.A. 2C:7-8(c).  All offenders convicted of certain designated sexual offenses are required to register with the police department in the municipality where they live by providing fingerprints and residency and employment information.  N.J.S.A. 2C:7–4b.

Moreover, if an offender's conduct is "characterized by a pattern of repetitive, compulsive behavior," the sentencing court "shall record [such] findings on the judgment of conviction" pursuant to N.J.S.A. 2C:47-3(a) ("compulsivity finding").  Under N.J.S.A 2C:7-2(e), offenders with a compulsivity finding must verify their registration with their local police department every ninety days ("quarterly verification requirement"), as opposed to yearly for all other sex offenders.  *See* N.J.S.A. 2C:7-2(e).

In 2001, following an authorizing amendment to the State Constitution, the New Jersey Legislature further established a sex offender internet registry to enhance public safety "by making information about certain offenders . . . available to the public."  N.J.S.A. 2C:7-12; *see* N.J. Const., Art. IV, § 7, ¶ 12.  While Tier One and certain Tier Two offenders were not initially included in the internet registry, the Legislature amended the statute in 2014 to include offenders who have a compulsivity finding, regardless of their tier classification.  *See* N.J.S.A. 2C:7-13(e), *as amended by* S. 2636, 215th Leg., 2nd Ann. Sess. (N.J. 2014).

Plaintiff is a Tier One sex offender who was convicted of Endangering the Welfare of a Child in the 3rd Degree on January 8, 2016.  (Compl. ¶¶ 15, 17.)  At the time of sentencing, the trial court made a compulsivity finding with respect to Plaintiff, subjecting him to the quarterly verification requirement and publication on the internet registry.  (*Id.* ¶¶ 16, 17.)

Plaintiff filed the instant suit on February 7, 2019, in the Superior Court of New Jersey, Law Division, Morris County. (*See* Compl. at 1.) He alleges that the use of the compulsivity finding to mandate more frequent registration verification and place his information on the internet registry violates his federal and state constitutional rights to procedural (Counts I and II) and substantive (Count III) due process. (*Id.* ¶¶ 170–92.) Defendant removed the case to this Court on March 15, 2019, and subsequently moved to dismiss the Complaint. (D.E. 1, 27.) Briefing was timely completed. (D.E. 27, 37, 41.)[2]

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

---

[2] Plaintiff's initial opposition brief, (D.E. 32), was stricken for exceeding page limit restrictions without authorization. (D.E. 38.) Plaintiff subsequently submitted an amended and compliant brief, (D.E. 41), which this Court considers.

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (discussing the *Iqbal* standard). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2). *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION[3]

### A. Substantive Due Process (Count III)

The Fourteenth Amendment's Due Process Clause prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The prohibition contains both a procedural and a substantive component. *See Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017); *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The substantive component "limits what [the] government may do regardless of the fairness of procedures that it employs in order to guarantee protection against government power arbitrarily and oppressively exercised." *Steele*, 855 F.3d at 501 (citations, quotations, and alterations omitted). It "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citations omitted); *see Reno v. Flores*, 507 U.S. 292, 301–02 (1993). Thus, when a challenged statute infringes upon a "fundamental" right, the statute is subject to heightened scrutiny, and will not ordinarily be upheld "unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (citations omitted). However, when no such fundamental right is implicated, a challenged statute "need only

---

[3] Plaintiff asserts claims under both 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. § 10:6-2 *et seq.*, which create private causes of action for violations of civil rights under the United States and New Jersey Constitutions, respectively. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). The NJCRA was modeled after 42 U.S.C. § 1983 and is similarly interpreted. *Id.*; *see Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012). This Court will therefore "analyze Plaintiff['s] NJCRA claims through the lens of § 1983." *Trafton*, 799 F. Supp. 2d at 444 (citations omitted).

4

be rationally related to a legitimate State interest" to be upheld.  *Holland v. Rosen*, 895 F.3d 272, 296 (3d Cir. 2018).

Here, Plaintiff asserts that he has a substantive due process right to an evaluation of his recidivism risk before being placed on the internet registry and subject to more frequent verification, instead of being subjected to those requirements based solely on his compulsivity finding.  (Compl. ¶¶ 184–92.)  He alleges that the compulsivity finding "has no present bearing on his risk of re-offending sexually now or in the future," citing various empirical studies and recent scientific literature.  (*Id.* ¶ 126; *see id.* ¶¶ 79–151.)  He further alleges that internet publication of low risk offenders with a compulsivity finding "misinforms the public as to their true level of dangerousness" and subjects the offenders to a lifetime of "differential treatment absent any relationship to re-offense risk."  (*Id.* ¶¶ 137–39.)

However, Plaintiff does not claim that the use of the compulsivity finding to require quarterly verification and internet publication implicates any fundamental liberty interests that would trigger heightened scrutiny.  Instead, he appears to concede that only rational basis review applies.  (*See id.* ¶ 188 (pleading that the use of the compulsivity finding as a basis for the additional requirements "is not rationally related to a legitimate state interest").)  "Under rational basis review, a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute." *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014) (citation and quotation omitted).  This standard of review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (citation and quotation omitted).  Rather, courts "are compelled . . . to accept a legislature's generalizations even when there is an imperfect fit between means and ends."  *Id.* at 321.

5

The Third Circuit has already held that Megan's Law's use of the compulsivity finding as a basis for distinguishing among sex offenders for registration requirements is rationally related to a legitimate state interest. *See Artway*, 81 F.3d at 1267–68 (analyzing Megan's Law in the equal protection context). In doing so, the Third Circuit identified Megan's Law's legitimate state interest as that of "[p]rotecting vulnerable individuals from sexual offenses." *Id.* In fact, the Third Circuit has gone further to hold that Megan's Law serves a *compelling* state interest, satisfying heightened scrutiny. *See Paul P. v. Verniero*, 170 F.3d 396, 404 (3d Cir. 1999) (citation omitted). Likewise, Megan's Law's use of the compulsivity finding to place Tier One sex offenders on the internet registry is also rationally related to that legitimate state interest. *See L.A. ex rel. Z.Kh. v. Hoffman*, 144 F. Supp. 3d 649, 668 (D.N.J. 2015) (Wolfson, J.) (finding that use of the compulsivity finding to place sex offenders on the internet registry survives heightened review).

Even if the compulsivity finding is an imperfect tool for measuring a Tier One sex offender's recidivism risk, this Court will not second-guess the Legislature's choice to use it as a basis for requiring quarterly verification and internet registry publication. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (holding that, on rational basis review, "a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data"). The New Jersey Legislature's judgment that a sex offender with a compulsivity finding is more likely to re-offend is rational, and to the extent that "updated empirical research establishes" otherwise, "the proper venue for th[at] suggestion[] is the State legislature, not the federal courts." *B.K. v. Grewal*, Civ. No. 19-5587, 2020 WL 5627231, at *6 n.7 (D.N.J. Sept. 21, 2020) (Wolfson, C.J.). Accordingly, this Court finds that the challenged provisions of Megan's Law withstand rational basis review and Plaintiff's substantive due process claim will therefore be dismissed.

### B. Procedural Due Process (Counts I and II)

The procedural due process component of the Fourteenth Amendment requires that "[b]efore a person is deprived of a protected interest, he must be afforded opportunity for some kind of a hearing, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *L.A. ex rel. Z.Kh.*, 144 F. Supp. 3d at 668 (quoting *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7 (1972)). "In analyzing a procedural due process claim, the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000) (citation omitted). If the asserted interest falls within the protections of the Due Process Clause, the second step is to determine whether the plaintiff was afforded all of the process he was due. *See id.*

Here, N.J.S.A. 2C:7-13(e) specifies that an offender is subject to placement on the internet registry, regardless of tier classification, if the sentencing court finds that "the offender's conduct was characterized by a pattern of repetitive, compulsive behavior." Plaintiff contends that this compulsivity finding is "wholly unrelated to and non-predictive of sex offense recidivism" and maintains that both the internet registry requirement (Count I) and compulsivity finding (Count II) arbitrarily and capriciously abrogate his constitutional rights. (Compl. ¶ 179; *see id.* ¶¶ 170–82.) Assuming, *arguendo*, that Plaintiff has identified a liberty interest (although it is not clear that he has),[4] this Court will determine whether he was afforded all process that he was due.

To determine compulsivity, a trial court must hold a separate and plenary evidentiary hearing following conviction, at the time of sentencing. *See State v. Howard*, 110 N.J. 113, 129–

---

[4] As noted by another court in this District evaluating a procedural due process challenge to Megan's Law, Plaintiff "point[s] to no statute or constitutional provision that creates a substantive liberty interest in a right to a weighing of the likelihood of recidivism." *B.K.*, 2020 WL 5627231, at *7.

7

31 (1988). In this hearing, the State of New Jersey must prove by a preponderance of the evidence that the sex offender's behavior is "repetitive and compulsive." *Id.*[5] Furthermore, following Chief Judge Wolfson's consent order in *L.A. ex rel. Z.Kh.*, 144 F. Supp. 3d 649, every Tier One and Tier Two sex offender is entitled to yet *another* hearing, where the State must prove compulsivity by *clear and convincing* evidence prior to placement on the internet registry. (*See* D.E. 41 at Attachment A.) Thus, Plaintiff has clearly received "a procedurally safeguarded opportunity to contest" the compulsivity finding. *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003).

Plaintiff also contends that a diagnostic report submitted by the State as evidence in the compulsivity hearing (following a psychological evaluation) is neither relevant nor scientifically reliable under the *Daubert* and *Frye* standards. (D.E. 41 at 37–38 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)).) However, the hearing affords the offender the ability to challenge the "accuracy or validity of the report's material factual or conclusional assertions," as well as the relevance and reliability of any other evidence presented. (*See id.* at 36 (quoting *State v. Horne*, 56 N.J. 372, 377 (1970)).) Moreover, offenders have the right to appeal both the compulsivity finding and the court's rulings on the admissibility of the evidence before it. *See* N.J. Ct. R. 3:21-4(h). To the extent Plaintiff argues that a compulsivity finding has no present bearing on recidivism, this is merely his "'substantive due process' argument recast in 'procedural due process' terms." *Reno*, 507 US at 308.[6] Procedural due process only requires "the government to accord the plaintiff a hearing to

---

[5] The New Jersey Supreme Court emphasized that, at this hearing, the sentencing court "need not determine that the [offender] is mentally ill and a danger to others," but "only that a[n] [offender], already found beyond a reasonable doubt to be guilty, is a 'repetitive and compulsive' sex offender." *Howard*, 110 N.J. at 131. The Court additionally expressed "reluctan[ce] to require an enhanced standard of proof that could subvert the State's interest in the rehabilitation of repetitive sex offenders." *Id.* at 129.

[6] Furthermore, Plaintiff's argument that the compulsivity finding is not "relevant" to determining recidivism, (D.E. 41 at 37), misconstrues what the finding actually is. The compulsivity finding is a judge's legal conclusion that an

prove or disprove a particular fact or set of facts" that are germane to the legal finding at issue. *Connecticut Dep't of Pub. Safety*, 538 U.S. at 7 (citations omitted).  Plaintiff's procedural due process claims will therefore also be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.  An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:      Clerk
cc:        Leda D. Wettre, U.S.M.J.
           Parties

---

"offender's conduct was characterized by a pattern of repetitive, compulsive behavior." *See* N.J.S.A. 2C:47-3(a).  It is not itself evidence that can be relevant or irrelevant under the rules of evidence.

9